UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In the matter of EMERGENCY ROOM MOBILE SERVICES, L.L.C., | § § § | |
| Debtor, | § § | |
| JOHN O. MARABLE, JR., | § § | |
| Appellant, | § § | |
| | § | CIVIL ACTION NO. 3:14-CV-2468-B |
| v. | § | (Appeal of Adversary No. 14-3018) |
| | § | |
| SAM PACK'S FORD COUNTRY OF LEWISVILLE, LTD., | § § | |
| | § | |
| Appellee. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

In this bankruptcy appeal, pro se Appellant John O. Marable, Jr. asserts that the bankruptcy court erroneously dismissed the adversary proceedings he initiated in his personal capacity against Appellee Sam Packs Ford Country of Lewisville, Ltd. For the reasons that follow, the Court **AFFIRMS** the bankruptcy court's dismissal.[1]

## I.

## BACKGROUND

This is a Chapter 11 bankruptcy case initiated by and for Emergency Room Mobile Services, L.L.C. (the "Debtor"), whose sole owner and principal is the Appellant, John O. Marable, Jr. ("Marable"). Marable brought the adversary proceedings at issue in this appeal in his personal

---

[1] Accordingly, the Court **FINDS MOOT** Pack Lewisville's Motion to Dismiss (doc. 3).

capacity against the Appellee, Sam Packs Ford Country of Lewisville, Ltd. ("Pack Lewisville"). He alleges that Pack Lewisville wrongfully pursued state criminal theft of service charges against him in an effort to collect a debt owed by the Debtor for unpaid mechanical services.

Marable's and Pack Lewisville's dispute dates back to December 8, 2011, at which time one of the Debtor's ambulances was brought to Pack Lewisville for repairs. Compl. ¶ 11.[2] After various attempts to fix the vehicle over the ensuing months, Pack Lewisville finally finished repairing the ambulance in late March 2012. *Id.* On April 1, 2012, Pack Lewisville notified the Debtor that its work on the ambulance was complete, with the final invoice totaling $10,083.90. *Id.* The Debtor, however, was unable to pay Pack Lewisville's invoice at that time, and subsequently filed a Chapter 11 bankruptcy petition on August 6, 2012. *Id.* ¶¶ 11, 12.

In light of the Debtor's Chapter 11 bankruptcy petition, Marable says that he "understood it was okay to retrieve the vehicle from [Pack Lewisville]." *Id.* ¶ 16. What happened next is not entirely clear,[3] but as Marable tells it, on August 20, 2012, "one of the Debtor's employees was directed to go test drive the [ambulance] to ensure [it] had been repaired correctly." *Id.* ¶ 16. Mid-test drive, Marable "observed the ambulance at a [g]as station getting fuel." *Id.* ¶ 17. Marable claims he then stopped and "noticed a clear liquid leaking" from the ambulance, at which point, the Debtor's "employee took the vehicle to the Debtor's mechanic at their maintenance facility," where the leak was later fixed. *Id.* ¶¶ 17, 18. Meanwhile, Marable drove the Pack Lewisville employee, who

---

[2] For ease of reference, the Court cites to Marable's "Emergency Complaint" at R. 29-39 as simply "Compl."

[3] Whether Marable actually violated state law, and engaged in the criminal conduct he was subsequently indicted for, is of no consequence in this appeal. The Court merely details the general circumstances surrounding these charges as background to Marable's claims and appeal.

rode along for the test drive, back to Pack Lewisville in "Marable's personal vehicle." *Id.* ¶ 18.

Later that same day, another Pack Lewisville employee "called Marable several times and stated they wanted the vehicle returned," which Marable claims "the Debtor had no obligation" to do in light of its previously-filed bankruptcy petition. *Id.* ¶ 19. Marable then notified another Pack Lewisville representative of the Debtor's pending bankruptcy. *Id.*

The next day, August 21, 2012, Pack Lewisville "filed a complaint with the [Lewisville] Police against" Marable for theft of services.[4] *Id.* ¶ 21. Pack Lewisville also sent Marable a letter on August 23, 2012, "demanding payment for the [unpaid invoice]." *Id.* Pack Lewisville later informed the Police that Marable refused to pay, and on September 5, 2012, the Police obtained a warrant for his arrest. *Id.* On April 13, 2013, a grand jury "returned a True Bill of Indictment against Marable for the charge of Felony Theft of Services." *Id.*

On February 25, 2014, with his criminal charges still pending, Marable filed an adversary complaint (the "Complaint") against Pack Lewisville in the Debtor's bankruptcy case.[5] Importantly, Marable filed these proceedings pro se and in his personal capacity. As explained in his Complaint, the "Debtor's Attorney" refused to join in these proceedings, advising Marable "that this matter should be filed [] 'in State Court and NOT the Bankruptcy Court.'" *Id.* ¶ 47 n.11.

Marable's Complaint asserts five related counts. Count I alleges that Pack Lewisville violated

---

[4] Marable's Complaint alleges here and elsewhere that these criminal allegations were asserted against "the Debtor," but the exhibits referenced in the Complaint show, instead, that only Marable was named as a defendant in the police reports and criminal filings. *See* R. at 40-67. Moreover, Marable admitted these actions were taken against him alone during the bankruptcy court's hearing.

[5] The Complaint also named the City of Lewisville Police Department and District Attorney Paul Johnson as defendants, but the claims against them were dismissed after Marable filed a notice of nonsuit against these two defendants. *See* R. at 124. These dismissed claims are not at issue in this appeal.

the automatic stay triggered by Debtor's bankruptcy under § 362(a) of the Bankruptcy Code. *Id.* ¶¶ 30-34. Count II asserts that Pack Lewisville violated the discharge injunction—entered in the Debtor's bankruptcy proceedings pursuant to § 524—by aiding a "prohibited" criminal prosecution to collect a discharged debt. *Id.* ¶¶ 35-40. Count III requests an injunction "under [§ 105(a)] to enjoin the prosecution in order to promote debtor reorganization and rehabilitation." *Id.* ¶¶ 41-47. Count IV asks to hold Pack Lewisville in contempt under § 105(a) through an award to Marable of emotional distress and other damages allegedly stemming from Pack Lewisville's willful violations of the Bankruptcy Code. *Id.* ¶¶ 48-52. Finally, Count V seeks "attorney's fees pursuant to" § 362(k) based on Marable's estimation "that approximately $7,500 in counsel fees alone will be required to litigate this matter." *Id.* ¶¶ 53-55.

After Pack Lewisville moved to dismiss, the bankruptcy court held a hearing on the motion on May 14, 2014. R. at 187. In that hearing, the court summarized its ruling as follows:

> [T]he Court is going to grant the motion to dismiss. I don't believe I have jurisdiction over this matter. Moreover, I also agree that under the very narrow circumstances under which I might have had jurisdiction, the claim was not pled in that way, and therefore, the motion should be granted both as it relates to 12(b)(1) and 12(b)(6).

*Id.* at 207-08. This ruling was later memorialized in a written order entered May 22, 2014. *Id.* at 2-3.

The bankruptcy court's May 22nd order also dismissed the Amended Complaint filed by Marable on the day of the hearing. *See id* at 3 n.1. This Amended Complaint contains largely the same allegations as Marable's initial Complaint, although the bankruptcy court did not address the merits of Marable's amendments, because they were filed "without leave of court or the consent of Defendants, in violation of Federal Rule of Civil Procedure 15." *Id.*

Marable subsequently filed a timely notice of appeal, and thereafter filed his appellant brief

(doc. 5).[6] Pack Lewisville later filed its appellee brief (doc. 6), to which Marable replied on December 7, 2014 (doc. 9), rendering this appeal ripe for consideration.

Marable raises five issues for the Court to consider in this appeal, including whether the bankruptcy court: (1) erred in dismissing Marable's Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), (2) erred in dismissing Marable's Complaint for failure to adequately state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), (3) abused its discretion in dismissing Marable's Amended Complaint, and (4) erred in concluding that it lacked subject matter jurisdiction under 28 U.S.C. § 157.[7] Doc. 5, Appellant Br. 4. Before addressing these issues, the Court begins with a review of the applicable standards of review in this case.

## II.

## LEGAL STANDARD

### A.    *Bankruptcy Standard of Review*

This Court applies the same general standard of review that the Fifth Circuit applies in reviewing a "bankruptcy court's findings of fact and conclusions of law." *In re SI Restructuring, Inc.*, 542 F.3d 131, 134 (5th Cir. 2008) (citing *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003)). Under this standard, "a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *Id.* (citing *Gerhardt*, 348 F.3d at 91).

---

[6] Pack Lewisville filed a Motion to Dismiss on August 21, 2014 (doc. 3) after Marable failed to timely file his appellant brief. Marable responded six days later by objecting to Pack Lewisville's Motion (doc. 4) and filing his appellant brief (doc. 6). Rather than address the merits of Pack Lewisville's Motion, the Court finds its assertions moot in light of its below affirmation of the bankruptcy court's decisions.

[7] Pack Lewisville additionally asks the Court to consider whether the Court should "dismiss this appeal or take other actions arising from Marable's late-filed appellate brief?" Doc. 4, Appellee Br. 1. The Court need not reach this issue, because even construing all assertions in Marable's favor, it would affirm the bankruptcy court's decisions.

Also note that the Court "may affirm for any reason supported by the record, even if not [explicitly] relied on by the [bankruptcy] court." *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (citing *LLEH, Inc., v. Wichita County, Tex.*, 289 F.3d 358, 364 (5th Cir. 2002)).

B.      *Rule 12(b)(1): Dismissal for Lack of Subject Matter Jurisdiction*

A bankruptcy court's dismissal "under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction" is generally reviewed *de novo. In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 (5th Cir. 2014) (citing *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012)). However, "purely factual findings" made by the bankruptcy court in ruling on a Rule 12(b)(1) motion are reviewed for "clear error." *Id.* (citing *In re Eckstein*, 672 F.3d at 314; *Complaint of Tom–Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996)). In reviewing a Rule 12(b)(1) motion, courts "may consider evidence outside the pleadings and resolve factual disputes." *Id.* (citing *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Ultimately, the burden of proof rests with "[t]he party asserting jurisdiction." *In re Eckstein*, 672 F.3d at 320 (citing *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

C.      *Rule 12(b)(6): Dismissal for Failure to State a Plausible Claim*

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a party's pleadings for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A bankruptcy court's dismissal pursuant to Rule 12(b)(6) is reviewed *de novo* and pursuant to the same legal standard applied by the lower court. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). This standard requires a complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether the complaint

states a plausible claim, courts "must accept [all] well-pleaded facts" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Likewise, well-pleaded facts must be "construed . . . in the light most favorable to the plaintiffs." *Kopp v. Klien*, 722 F.3d 327, 333 (5th Cir. 2013). However, courts need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 361 (5th Cir. 2004)).

      D.     *Pro Se Litigants*[8]

      As a pro se litigant, Marable's "pleadings are to be construed liberally." *Sama v. Hannigan*, 669 F.3d 585, 599 (5th Cir. 2012) (citing *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002)). Similarly, his "pro se briefs are afforded liberal construction." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). The rationale here is that it "would be inequitable" to hold pro se litigants to strict procedural standards and thereby punish such litigants "for lacking the linguistic and analytical skills of a trained lawyer." *Perez*, 312 F.3d at 194. Nonetheless, courts "still require pro se parties to fundamentally 'abide by the rules that govern the federal courts.'" *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (citing *Frazier v. Wells Fargo Bank, N.A.*, 541 Fed. Appx. 419, 421 (5th Cir. 2013)). Thus, courts have held, for example, that "[p]ro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, . . . and brief arguments on appeal." *Id.* (citations omitted).

---

[8] Note that the Court declines Pack Lewisville's invitation to review Marable's assertions under a standard of review that does not take into consideration his pro se status. Though Marable's failure to comply with applicable rules of procedure may warrant such a review, the Court would affirm the bankruptcy court's decision even under the more liberal standard that pro se litigants are afforded.

## III.

## ANALYSIS

The central issue in this appeal is whether the bankruptcy court properly dismissed the five claims in Marable's Complaint pursuant to Rules 12(b)(1) and 12(b)(6). These five causes of action generally fall into three groupings for purposes of analysis. First, Counts I and V of Marable's Complaint seek damages under 11 U.S.C. § 362(k) based on Pack Lewisville's alleged violations of the automatic stay entered upon the Debtor's filing for bankruptcy.[9] Second, Counts II and III request an injunction based on Pack Lewisville's alleged violation of the discharge injunction entered following confirmation of the Debtor's bankruptcy reorganization plan. Third, Count IV asks the bankruptcy court to hold Pack Lewisville in contempt for each of its alleged violations. In addition, Marable argues on appeal that the bankruptcy court should have sustained his claims based on certain assertions not pled in his Complaint. Finally, the Court must also consider below whether the bankruptcy court abused its discretion in dismissing Marable's Amended Complaint.

A.      *Counts I & V: Automatic-Stay Claims Filed Pursuant to § 362(k)*

Marable's first set of claims, Counts I and V, seek relief under § 362(k) for Pack Lewisville's alleged violation of the automatic stay in Debtor's bankruptcy case. Pursuant to § 362(a), this automatic stay went into effect when the Debtor filed for bankruptcy on August 6, 2012; thereafter, creditors holding pre-petition claims against the Debtor were prohibited from engaging in a number

---

[9] Count I actually just states that Pack Lewisville violated § 362(a), without identifying § 362(k) or any other law under which Marable is entitled to relief for this alleged violation. Nonetheless, since § 362(k) expressly offers a cause of action for automatic stay violations, the Court presumes that Marable intended to assert Count I pursuant to § 362(k). Likewise, Count V merely claims that Marable is entitled to attorneys' fees under § 362(k), without indicating any underlying legal violation. But since damages under § 362(k) are only available to "individual[s] injured by any willful violation of [an automatic stay]," 11 U.S.C. § 362(k)(1), Count V presumably relies on the same alleged misconduct underlying Count I.

of collection-related activities. *See* 11 U.S.C. § 362(a) ("[A] petition filed under section 301, 302, or 303 of [the Bankruptcy Code] . . . operates as a stay, applicable to all entities, of [various debt-collection activities]"). Despite having notice of the stay, Marable claims that Pack Lewsiville subsequently attempted to collect on the $10,083.90 invoice that Debtor owed for unpaid mechanical services in violation of § 362(a). Based on these alleged stay violations, Marable sued Pack Lewsiville under § 362(k), which provides that "[a]n individual injured by any willful violation of a stay provided by [§362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

On appeal, the parties raise two issues in relation to Marable's § 362(k) claims. First, they contest whether Marable has prudential standing to bring this action under § 362(k). Second, to the extent Marable does have standing, if at all, the parties dispute whether the bankruptcy court properly dismissed both counts pursuant to Rule 12(b)(6) for failure to adequately state a claim. The Court addresses each of these issues, in turn, below.

    1.    <u>Marable's Prudential Standing Under § 362(k)</u>

The parties first dispute whether Marable has prudential standing under § 362(k).[10] Prudential standing is a "judicially self-imposed" doctrine "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Warth*, 422 U.S. at 498). Because they do not derive from the judicial authority prescribed by Article III, "Congress can 'modify or even

---

[10] Standing generally imposes "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). However, the parties have not disputed Marable's standing under the Constitution, and the Court finds no reasonable basis to inquire into this issue on its own.

abrogate prudential standing['s] requirements.'" *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d

533, 539 (5th Cir. 2009) (quoting *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th

Cir. 2001)). Courts have found prudential standing to include "at least three broad principles: the

general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication

of generalized grievances more appropriately addressed in the representative branches, and the

requirement that a plaintiff's complaint fall within the zone of interests protected by the law

invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing

*Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004); *Allen*, 468 U.S. at 751) (quotation

marks omitted).

Despite the Supreme Court's recent criticism of the prudential standing doctrine, and the

zone-of-interest test in particular,[11] the Fifth Circuit continues to endorse the doctrine's application.

*See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 506 (5th Cir. 2015)

("[W]e have long applied the prudential requirement that a party must assert its own rights and we

are bound to follow our precedent until the Supreme Court squarely holds to the contrary.")

(internal citation omitted). Moreover, prudential standing remains "especially important in

bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of

---

[11] The Supreme Court recently held that the third prudential standing principle—the zone-of-interests requirement—"does not belong" under the prudential standing analysis, and is better framed as a question on the merits—whether a particular party "has a cause of action under the statute" in question. *Lexmark Int'l*, 134 S. Ct. at 1387. This distinction, however, has no real impact here, as the Court's standing analysis focuses solely on the relevant allegations in Marable's Complaint, just as the Court would do in reviewing the merits of his pleadings pursuant to Rule 12(b)(6). *See Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 201 (2d Cir. 2014) ("As the Supreme Court [in *Lexmark*] made clear, determination whether a claim satisfies [the zone-of-interest test] goes not to the court's jurisdiction—that is, 'power'—to adjudicate a case, but instead to whether the plaintiff has adequately pled a claim."). Further, the Court's below conclusion that Marable lacks standing to the extent he basis his claims on his personal, rather than creditor, interests does not turn solely on the zone of interests requirement.

third parties for their own benefit." *In re Ampal-American Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013) (citing *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988)).

The parties agree that the question of whether Marable has prudential standing to bring suit under § 362(k) is controlled by the Fifth Circuit's decision in *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009). In *Labuzan*, two bankruptcy creditors, the Labuzans, sought standing to assert a § 362(k) claim against another creditor, St. Paul, for its alleged violation of the automatic stay in bankruptcy proceedings initiated for CTL, a construction company in which the Labuzans held controlling equity interests. St. Paul argued that the Labuzans lacked prudential standing under § 362(k), because their claims "belong[ed] to CTL's bankruptcy estate," not the Labuzans. *Id.* at 539. St. Paul further asserted that "any damages claimed by the Labuzans" were really damages owed to CTL, with "the Labuzans being secondary obligors" lacking prudential standing to bring suit for this indirect harm. *Id.*

The Fifth Circuit rejected St. Paul's contentions and found in favor of the Labuzans on all three prudential standing requirements. In regards to the zone of interests requirement, the Fifth Circuit reviewed the relevant legal authorities and held that "debtors and creditors are entities whose grievances fall 'within the zone of interests' protected by § 362(k)." *Id.* at 543. Next, drawing on its conclusion under the zone of interests analysis—that "the congressional purposes behind § 362(k) were debtor, as well as creditor, protection"—the Fifth Circuit held that the Labuzans' § 362(k) claim did not involve "abstract questions or a generalized grievance more properly addressed by the legislative branch." *Id.* at 543-44 (citation omitted). Third and finally, the court concluded that the Labuzans were not improperly "asserting claims that belong to CTL's bankruptcy estate," reasoning

that while "[i]t is possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events[,] . . . [t]he Labuzans' claims and those of the CTL bankruptcy estate are not mutually exclusive." *Id.* at 544-45 (citation omitted).

After reaching the above conclusions, however, the Fifth Circuit clarified the limits of its holdings in *Labuzan*. For one, it noted that while the Labuzans had standing under § 362(k) "as *pre-petition creditors* of CTL," they would not have standing "to the extent the Labuzans' claims are based on their status as *owners/equity holders* of CTL." *Id.* (emphasis in original). In addition, the Fifth Circuit indicated that it gave no consideration as to "what, if any, injuries claimed by the Labuzans were sustained in their capacity as CTL's creditors"—an issue for which, the lower court had previously found, "material issues of fact existed." *Id.* at 537, 545.

In this case, Marable asks the Court to simply apply the holding from *Labuzan* and find that he has prudential standing under § 362(k) as a creditor in the Debtor's bankruptcy. Appellant Br. 9. He maintains that his § 362(k) claims are no different than those brought by the Labuzans, who were also creditors in the underlying bankruptcy by way of their ownership interests in the debtor, and who similarly "claimed injury from an automatic stay violation." *Id.* As such, he argues that the Court should find that he has standing under § 362(k) for the same reasons that "[t]he Fifth Circuit ruled in favor of the Labuzans as having standing to pursue damages for [a] stay violation." *Id.*

In response, Pack Lewsiville argues, first, "to the extent Marable attempts to assert claims arising from alleged injuries solely to the Debtor . . . he does not have standing to do so" under *Labuzan.* Appelle's Br. 8-9. Next, Pack Lewisville asserts that "even if Marable is a creditor, 'the fact that someone is a pre-petition creditor is not a foot in the door that allows [that person] to recover damages [under § 362(k)] for injuries suffered to [his or her] non-creditor interests." *Id.* at 9 (quoting

*Ampal-American*, 502 B.R. at 371). And here, Pack Lewisville argues, "Marable's claims (as distinct from the Debtor's) are based solely on his individual status or as an owner/equity holder," which according to *Labuzan*, are not injuries for which standing may be asserted under § 362(k). *Id.* at 10. The Court agrees.

Superficial similarities aside, Marable's § 362(k) claims are not at all like the ones asserted in *Labuzan*. There, the Labuzans had a legitimate claim under § 362(k) for injury to their *creditor* interests that was reasonably severable from any potential injury they may have illegitimately claimed "based on their status as *owners/equity holders* of [the debtor]." *Labuzan*, 579 F.3d at 545; *see also In re 110 Beaver Street Partnership*, 355 Fed. Appx. 432, 439 n.9 (1st Cir. 2009) ("[A]s [*Labuzan*] makes clear, the creditor must be able to allege an injury as a creditor from he violation of the automatic stay."). But here, Marable's alleged injuries do not plausibly relate to his interests as a creditor in Debtor's bankruptcy. Instead, almost all of Marable's alleged injuries concern harms suffered in his *non-creditor/personal* capacity, including his arrest, costs associated with defending himself in the criminal proceedings, his loss of the treasurer position for his homeowner's association, and the mental and emotional distress he suffered during this process.[12] *See* Compl. ¶¶ 26-28, 43, 44, 50. These alleged injuries bear no plausible connection to Marable's interests as a creditor of the Debtor. And the only other injuries alleged by Marable—including assertions that the stay violations have interfered with the Debtor's reorganization plans, *id.* ¶ 45—concern injuries to the Debtor alone, which Marable has no standing to pursue in his *owner/equity holder* capacity. *See 110 Beaver Street*

---

[12] Marable's claim for attorneys fees in this matter (even though he is pro se) is harder to characterize in terms of what interests of Marable's it affected, because this asserted injury is hypothetical—what Marable would pay in counsel fees if he had hired an attorney in this matter. But even if this alleged injury is reason to grant Marable standing, his claim would still fail, as discussed below, for failure to state a claim.

*Partnership*, 355 Fed. Appx. at 439 (partners of a "Partnership" in bankruptcy lacked standing under § 362(k), because their "complaint simply [did] not state a claim for damages that is separate, as a matter of fact and law, from damages to the Partnership"). Therefore, the Court concludes that the bankruptcy court properly dismissed Marable's § 362(k) claims on standing grounds pursuant to Rule 12(b)(1).

2.      <u>Plausibility of Marable's § 362(k) Claims</u>

Even if Marable has prudential standing under § 362(k), the Court would still conclude that the bankruptcy court properly dismissed his § 362(k) claims pursuant to Rule 12(b)(6) for failure to state a plausible cause of action. To properly state a claim under § 362(k), Marable must plausibly allege (1) an automatic stay violation, (2) that was "willful," and (3) that "injured" Marable such that he is entitled to "actual damages." 11 U.S.C. § 362(k)(1); *see also In re Marino*, 437 B.R. 676, 678 (B.A.P. 8th Cir. 2010) (citing *Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir. 1991)); *In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008) (citing *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005)).

Pack Lewisville argues that the bankruptcy court properly dismissed Marable's § 362(k) claims under Rule 12(b)(6) for two reasons. *See* Appellee's Br. 13-15. First, it asserts that Marable's "allegations regarding the criminal prcoeedings cannot support" an automatic stay violation. *Id.* at 13. Second, Pack Lewisville also contends that, keeping in mind that "the Court must assess whether [Marable] states a claim only in his capacity as a creditor" under *Labuzan*, Marable fails to "allege any unique injury he sustained as a creditor" due to the alleged stay violations. *Id.* at 14-15.

Marable, on the other hand, asserts that the bankruptcy court erred in dismissing his Complaint, because he properly alleged each requirement for his § 362(k) claims. *See* Appellant Br. 10-13; Appellant's Reply 10-13. He highlights that his pleadings indicate that Pack Lewisville

-14-

"violated the automatic stay by commencing collection activities," including sending a letter "demanding a pre-petition payment on the Invoice" and threatening criminal prosecution. *Id.* In addition, he notes allegations that Pack Lewisville's conduct interfered "with Debtors business operations that threaten Debtor's chance of successful reorganization," as well as allegations related to the mental and emotional distress he suffered. *Id.* at 10-12. Despite these contentions, the Court agrees with the bankruptcy court and Pack Lewisville that Marable's § 362(k) pleadings are deficient.

First, Marable's § 362(k) claims are subject to dismissal under Rule 12(b)(6) to the extent they rely on allegations that Pack Lewisville assisted in the prosecution of criminal theft of services charges against Marable. Marable vaguely alleges that Pack Lewisville "violated the automatic stay by commencing its collection activities without first obtaining relief from the automatic stay." Compl. ¶ 23. To the extent these "collection activities" refer to Pack Lewisville's participation in the criminal theft of services proceedings against Marable, they do not violate the automatic stay that was in place in Debtor's bankruptcy case. *See* 11 U.S.C. § 362(b)(1) ("The filing of a [Chapter 11] petition . . . does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding . . . ."). Thus, for Marable to state his § 362(k) claims, he must plausibly allege an actionable injury from other violative conduct that Pack Lewisville purportedly engaged in. This arguably includes the "demand letter" Pack Lewisville sent Marable, and the calls it made to Marable demanding the ambulance's return before going to the police.[13] All other conduct alleged by Marable

---

[13] This assumes that this alleged conduct does not fall within the scope of conduct concerning "the commencement or continuation of a criminal action or proceeding" under § 362(b)(1), which is not covered by the automatic stay. The Court also assumes, without deciding, that Pack Lewisville's demand letter and calls to Marable were effectively collection actions against the Debtor, given that "the automatic stay applies only to the debtor," except "where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc. v. Enron*

is either too vague and conclusory to satisfy federal pleading standards, or falls outside of the scope of the automatic stay pursuant to § 362(b)(1)'s exception for criminal prosecutions.

Second, based on the Court's above conclusions, Marable's Complaint does not plausibly allege a cognizable injury caused by Pack Lewisville's actionable stay violations. As a reminder, the only injuries that Marable has standing to assert here are those he allegedly suffered "as [a] *pre-petition credito[r] of [the Debtor]." Labuzan*, 579 F.3d at 545. In addition, these injuries must be caused "by" the alleged conduct that actually violated the automatic stay, 11 U.S.C. § 362(k)(1), which the Court already found to be limited to the alleged demand letter and calls by Pack Lewisville to Marable. Under these parameters, Marable's injury allegations are implausible.

To illustrate, the costs Marable allegedly incurred while defending himself in criminal proceedings, his loss of standing with the homeowner's association, and the disruption in Debtor's reorganization plan—even assuming these are somehow injuries to his creditor interests—relate solely to Pack Lewisville's alleged participation in Marable's criminal proceedings.[14] Likewise, the mental and emotional distress that Marable allegedly suffered bears no plausible connection to his interests as a creditor, and even if it did, he never claims that his distress was actually caused by Pack Lewisville's single demand letter or four alleged calls. Instead, his Complaint vaguely states that "Defendants['] actions herein have subjected plaintiff to humiliation and embarrassment, as well as

---

*Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (citations and quotation marks omitted).

[14] *See* Compl. ¶¶ 26, 28 (referring to the bonds Marable allegedly paid and posted because of the criminal theft of service charges); *id.* ¶ 44 ("The Home Owner Association has asked Marable to resign his position as Treasurer *due to the theft of service charges*") (emphasis added); *id.* ¶ 45 ("Defendants are interfering with Debtors business operations that threaten Debtor's chance for successful reorganization. For the past 18 months, Debtor has been ineligible to get a City of Dallas ambulance license *due to the pendency of the felony of theft charges*.") (emphasis added).

fear and anxiety about the losing (sic) the business as a result." Compl. ¶ 50. Such vague allegations

do not establish a plausible claim for emotional distress damages under § 362(k).[15] Finally, Marable's

last alleged injury—that he has "been required to retain counsel in regards to this action"—fails on

a number of grounds. *Id.* ¶ 55. To the extent Marable is referring to his attorney fees associated with

his criminal defense, the Court already rejected these claimed damages above. Otherwise, Marable

is presumably referring to attorney fees he "estimates" paying "to litigate this" adversary proceeding,

even though he is a pro se litigant. *Id.* Such hypothetical costs are clearly not the sort of "actual

damages" contemplated by § 362(k). As such, the Court concurs with the bankruptcy court that

Marable has failed to properly allege his § 362(k) claims under the Rule 12(b)(6) pleading standard.

B.      *Marable's Discharge Injunction Claims (Counts II & III)*[16]

Marable's second set of claims seek to enjoin the theft of service criminal proceedings brought

against him in state court, alleging that such proceedings violate the discharge injunction entered

in Debtor's bankruptcy case. Compl. ¶¶ 35-47. As Marable's theory goes, Pack Lewisville's debt claim

---

[15] *See Repine*, 536 F.3d at 521-22 ("[A]t minimum, Repine was required to set forth 'specific information' concerning the damages caused by his emotional distress rather than relying only on 'generalized assertions.'") (quoting *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir.1999)); *see generally In re Snowden*, 769 F.3d 651, 656-57 (9th Cir. 2014) (explaining that emotional distress damages are only recoverable under § 362(k) "if the bankruptcy petitioner (1) suffers significant harm, (2) clearly establishes the significant harm, and (3) demonstrates a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)") (citation, quotation marks, and alterations omitted).

[16] Injunctive relief appears to be the only remedy that Marable seeks for Pack Lewisville's alleged violations of the discharge injunction, and thus, the Court discusses the dismissal of Count II (which alleges the discharge injunction violation) and Count III (which seeks to enjoin the alleged discharge injunction violations) in tandem. To the extent Marable seeks damages for contempt (Count IV) based on the alleged discharge injunction violations asserted under Count II, the Court disposes of this claim in the subsection that follows this one. To the extent Marable seeks damages or some other form of relief based on the discharge injunction allegations, he has identified no legal basis for asserting such a claim.

for unpaid mechanical services was discharged when it failed to file a timely proof of claim during

Debtor's bankruptcy proceedings,[17] and thus, any action attempting to collect on this discharged debt

was thereafter prohibited by the discharge injunction under 11 U.S.C. § 524(a)(2).[18] *Id.* ¶¶ 36-40

(Count II). The state criminal action subsequently brought against Marable, in his view, is Pack

Lewisville's attempt to collect on its discharged debt in violation of the discharge injunction. *See id.*

And since this action has allegedly caused "irreparable har[m]" to Marable and undue "interfer[ence]

with Debtor[']s business operations that threaten Debtor's chance for a successful reorganization,"

he argues that the bankruptcy court should have entered an injunction, pursuant to its equitable

powers under 11 U.S.C. § 105, enjoining the state criminal proceedings from continuing in violation

of § 524(a)(2). *Id.* ¶¶ 42-47 (Count III); *see also* Appellant's Br. 10-11.

The bankruptcy court declined to grant Marable's injunction primarily because it found that

it lacked jurisdiction over his dispute with Pack Lewisville. In doing so, the court reasoned that the

only potential type "of jurisdiction a bankruptcy court" may have over Marable's claims here "is what

we call related-to, if the claim relates to the bankruptcy case. And for that, the outcome has to have

a conceivable effect upon the estate being administered in bankruptcy." R. at 203. The court, then,

explained that the outcome of the criminal proceeding against Marable would have no conceivable

effect on the Debtor's estate, "because [the State and Pack Lewisville] aren't pursuing the

bankruptcy estate at all. So, if they succeed against you, it doesn't have anything to do with the

---

[17] For background, the bankruptcy court's confirmation of a debtor's plan generally "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1).

[18] Section 524(a)(2) provides that a "discharge . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

estate, so I don't have related-to jurisdiction," the court concluded. *Id.* at 203-04. Similarly, Pack Lewisville asserts a slightly different ground for dismissal of Marable's § 524 claims on appeal—that "the discharge injunction does not discharge the debts of non-debtors," and thus, Marable "lacks standing to pursue claims for alleged violations of the discharge injunction entered for the benefit of the Debtor." Appellee's Br. 11-12. For similar reasons, the Court affirms the bankruptcy court's dismissal of Marable's request for an injunction based on the alleged discharge injunction violations.

As an initial matter, Marable's claims appear to be moot based on a representation in his reply brief that "there isn't any criminal proceeding pending against Marable" any longer. Doc. 9, Appellant's Reply 10. If true, the Court is unaware of any grounds on which it could enjoin a proceeding that is no longer ongoing. Nor would there be any point in addressing Marable's allegations that such proceedings violate Debtor's discharge injunction. As such, Counts II and III of Marable's Complaint appear to be subject to dismissal on the ground that they are moot. But even assuming Marable's discharge injunction claims are not moot, the Court finds additional grounds for dismissing his appeal of the bankruptcy court's determinations.

First, the Court concludes that the bankruptcy court properly found that it lacked jurisdiction to enjoin Marable's criminal proceedings. When presented with claims to enjoin "third-party actions," such as the criminal proceedings at issue, courts "must determine if these actions are 'related to' the bankruptcy case" for purposes of subject matter jurisdiction under 28 U.S.C. § 1334(b).[19] *In re Zale*, 62 F.3d 746, 751 (5th Cir. 1995) (citing *Quattrone Accountants, Inc. v. I.R.S.*,

---

[19] This provision confers "original but not exclusive jurisdiction" to district courts in regards to "all civil proceedings arising under [the Bankruptcy Code], or arising in or *related to* cases under [the Bankruptcy Code]. 28 U.S.C. § 1334(b) (emphasis added).

895 F.2d 921, 926 (3d Cir. 1990)). "Related to" subject matter jurisdiction exists "if 'the outcome of [the third-party] proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id.* at 752 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)). While "a large majority of cases reject the notion that bankruptcy courts have 'related to' jurisdiction over third-party actions," the ones finding jurisdiction have generally done so in circumstances where either (a) "the subject matter of the third-party dispute is property of the estate, or" (b) "the dispute over the asset would have an effect on the estate." *Id.* at 753 (collecting cases).

Here, the bankruptcy court correctly concluded that it lacks "related to" jurisdiction over the third party dispute that Marable sought to enjoin. Keep in mind, "it is the relation of the dispute to the estate, and not of the party to the estate, that establishes jurisdiction." *Id.* at 755 (explaining that even though "CIGNA, through its participation in the settlement, is 'related to' the estate and the debtor[,] . . . [t]he 'disputes' in question are [two third parties'] tort and contract claims against CIGNA, the litigation of which the injunction purports to prevent"). Thus, regardless of Marable's and Pack Lewisville's relation to Debtor's bankruptcy, the bankruptcy court would not have jurisdiction over Marable's § 524 claims if the state criminal proceedings were not sufficiently "related to" the Debtor's bankruptcy. And here, the outcome of Marable's criminal proceedings would have no conceivable effect on Debtor's bankruptcy estate. Unlike the cases granting jurisdiction over third-party actions, the criminal proceedings at issue involve neither (a) subject matter of the Debtor's estate, nor (b) an asset that would have an effect on the estate. Rather, the proceedings concern Marable's personal, criminal liability. Whatever the outcome of these proceedings may be, the Debtor's estate will remain unaffected. Therefore, the Court agrees with the bankruptcy court that it lacked jurisdiction over Marable's claims.

Second, even if the bankruptcy court had jurisdiction, Marable's claims would fail on other grounds. One such ground is that the bankruptcy court lacked power to issue the injunction Marable sought in Count III of his Complaint. Under § 105 of the Bankruptcy Code, bankruptcy courts have the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have found this power to include "the authority to enjoin litigants from pursuing actions in other courts that threaten the integrity of the Debtor's estate." *In re Apollo Molded Pdts., Inc.*, 83 B.R. 189, 191 (Bankr. D. Mass. 1988) (collecting cases). However, "a § 105 injunction must be consistent with the rest of the Bankruptcy Code." *Zale*, 62 F.3d at 760. For example, the Fifth Circuit has held that "we must overturn a § 105 injunction if it effectively discharges a nondebtor," *id.*, because such an injunction would be inconsistent with § 524(e), which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Likewise, in this case, Marable requested an injunction that would effectively discharge him, a nondebtor, from criminal liability, even though the Debtor's confirmation plan only discharged debts of the Debtor, not Marable. Therefore, Marable's claims would be inconsistent with § 524(e), and as such, the bankruptcy court could have properly declined to issue a § 105(a) injunction on this basis.

Finally, Marable's claim that Pack Lewisville's pursuit of criminal charges violated the discharge injunction in Debtor's case was properly dismissed by the bankruptcy court as implausible. As mentioned, the confirmation plan in Debtor's case discharged only those claims held against the Debtor, and § 524(e) prohibited the plan from discharging parties other than the Debtor from claims based on their own personal liability. Thus, while Pack Lewisville was barred by § 524(a)(2)'s discharge injunction from pursuing any action against the Debtor for its unpaid mechanical services

bill, Pack Lewisville was not barred from pursuing a criminal action against Marable for his allegedly criminal conduct in attempting to re-possess the Debtor's ambulance, and the criminal action against him cannot be characterized as such.[20] Ultimately, it was Marable's own actions that gave rise to the criminal liability he personally faces under Texas law, and to the extent this action was brought for improper purposes or to collect a debt that he does not personally owe Pack Lewisville, the Court agrees with the bankruptcy court and counsel for the Debtor that such a defense is for the state court to resolve pursuant to the applicable law in those proceedings. *See* Compl. ¶ 47 n.11 ("And Debtor's Attorney is of [the] opinion that this matter should be filed in 'in (sic) State Court and NOT in the Bankruptcy Court."); R. at 201 (bankruptcy judge explaining to Marable that "[i]f you think that the action against you is improper, that will be a defense in the action, right, that they can't hold you liable, they can't pursue these issues against you"). But since Marable has no plausible claim to assert in the federal bankruptcy proceedings at hand, the Court affirms the bankruptcy court's dismissal of his discharge injunction claims.

C.      *Contempt Claim (Count IV)*

Marable's final claim, Count IV, seeks an order awarding him damages for Pack Lewisville's "contemptuous conduct." *See* Compl. ¶¶ 49-52. More specifically, Count IV asks the bankruptcy court to hold Pack Lewisville in contempt, pursuant to its equitable powers under § 105(a), as a way of compensating Marable and punishing Pack Lewisville for its willful violations of the Bankruptcy Code. *Id.* ¶¶ 49-52. For many of the same reasons already discussed, the Court finds that the

---

[20] *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 590 (5th Cir. 2008) ("Since the plan only releases the estate's claims against Chesapeake (as that was all it could release), the bondholders' pursuit of their own claims against Chesapeake cannot be characterized as an attempt to invalidate the release contained in the plan . . . .").

bankruptcy court did not err in dismissing Marable's contempt claim.

As an initial matter, Marable's request for "punitive damages" pursuant to the bankruptcy court's contempt power, *id.* ¶¶ 49, 51, could not have been granted by the bankruptcy court under these circumstances. Contempt may be characterized as criminal or civil "'depending on its primary purpose.'" *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (quoting *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). A contempt order is considered criminal if its purpose "'is to punish the contemnor and vindicate the authority of the court,'" whereas civil contempt orders may be issued in order "to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation.'" *Id.* (quoting *Lamar*, 918 F.2d at 566). Thus, by requesting a contempt order awarding "punitive damages," Marable was asking the court to exercise its power to issue criminal contempt orders. But the Fifth Circuit has "held that bankruptcy courts lack criminal contempt power, at least regarding conduct occurring outside the presence of the court . . . ." *Id.* at 266 (citing *Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1521 (5th Cir. 1990)). And here, the allegedly contemptuous conduct occurred solely outside the bankruptcy court's presence. Accordingly, the bankruptcy court's power in these circumstances was limited, as a preliminary matter, to issuing a civil contempt order.

A bankruptcy court's civil contempt power derives from § 105(a), under which courts have the authority to "issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *In re Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997). The party seeking such an order must first establish "'(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order.'" *In re Lothian Oil, Inc.*, 531 Fed. Appx. 428, 445 (5th Cir. 2013)

(quoting *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995) (alterations omitted). And as mentioned, the purposes for which a civil contempt order may be issued include coercing "'compliance with a court order or to compensate another party for the contemnor's violation.'" *In re White-Robinson*, 777 F.3d 792, 795 (5th Cir. 2015) (quoting *In re Fuel & Lube*, 108 F.3d at 612). Bankruptcy courts have discretion in determining whether to award "monetary sanctions for contempt," and thus, the Court reviews the bankruptcy court's decision to not issue a civil contempt order under an "abuse of discretion" standard. *Bradley*, 588 F.3d at 261 (citations omitted).

The bankruptcy court in this case did not abuse its discretion in declining to issue a civil contempt order for a number of reasons. First, to the extent the "contemptuous conduct" relied on by Marable in Count IV is Pack Lewisville's alleged automatic stay violations, the reasons for dismissing Marable's § 362(k) claims are applicable here as well. Like his § 362(k) claims, Marable lacks standing to pursue a civil contempt order based on Pack Lewisville's alleged violation of the automatic stay in Debtor's bankruptcy proceedings.[21] Similarly, given Marable's failure to plausibly assert an injury stemming from the alleged stay violations, the bankruptcy court was left with no reasonable basis for issuing a civil contempt order. As a reminder, civil contempt orders may generally be issued "to insure compliance with the automatic stay or to compensate [a party] for losses or damages sustained because of a stay violation.'" *In re MD Promenade, Inc.*, No. 08-34113-SGJ-7, 2009 WL 80203, at *12 (Bankr. N.D. Tex. Jan. 8, 2009) (quoting *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003)) (alterations omitted). But here,

---

[21] *See In re Natchez Corp. of W. Virginia*, 953 F.2d 184, 187 n.5 (5th Cir. 1992) ("Because the FDIC lacked standing [under 11 U.S.C. § 549] to [remedy] Lilly's [alleged violation of the § 362 automatic stay], it also lacked standing to seek contempt sanctions for Lilly's alleged willful violations of the stay.").

the bankruptcy court had no reason to coerce Pack Lewisville into complying with the automatic stay—which Pack Lewisville was not in violation of—and it had no cognizable injury for which to compensate Marable or the Debtor. Therefore, the bankruptcy court did not err in declining to hold Pack Lewisville in contempt for its alleged automatic stay violations.

Second, to the extent the "contemptuous conduct" relied on by Marable in Count IV is Pack Lewisville's alleged discharge injunction violations, his contempt claim is subject to dismissal on the same grounds as Counts II and III of his Complaint. As discussed above, the bankruptcy court lacked "related to" jurisdiction over the alleged discharge injunction violations. This result is the same regardless of whether Marable is seeking an injunction under § 105 (as in Count III) or a civil contempt order under § 105 (as in Count IV) to remedy this same alleged misconduct. And even if the bankruptcy court had jurisdiction here, Marable has not established that Pack Lewisville "failed to comply with the court's order," *Lothian Oil*, 531 Fed. Appx. at 445 (citation omitted), given the Court's above conclusion that Pack Lewisville's pursuit of criminal theft of service charges did not violate the discharge injunction in Debtor's bankruptcy. As such, the bankruptcy court also acted within its discretion in dismissing Marable's contempt claim insofar as the claim relied on Pack Lewisville's alleged discharge injunction violation. For all these reasons, the Court concludes that the bankruptcy court did not err in dismissing Marable's contempt claim.

D.    *Marable's Unpled Assertions Regarding Standing*

Pack Lewisville highlights two assertions made by Marable in his appellate brief that were not pled in his Complaint, and arguably waived for this appeal. *See* Appellee's Br. 6-8. Only one of these

assertions warrants further discussion.[22] In particular, Marable argues on appeal that he has standing to "file an adversary complaint against [Pack Lewisville]" in his capacity as a principal of the Debtor seeking "to enforce" the bankruptcy court's order confirming the Debtor's plan of reorganization. Appellant's Br. 8. In this regard, he asserts that the bankruptcy court's confirmation order grants him standing to prevent Pack Lewisville from "exercis[ing] control over property of the estate." *Id.* As follows, the Court finds these unpled assertions insufficient to alter any of its above determinations.

First, the Court agrees with Pack Lewisville that these assertions need not be considered in this appeal. Issues raised on appeal that were not asserted below are deemed waived by the reviewing court. *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 355 n.1 (5th Cir. 2012) (citing *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007)). In responding to Pack Lewisville's waiver contentions, Marable does not cite a single representation in his bankruptcy court filings showing that his standing assertions were raised below. *See* Appellant's Reply 4-6. Instead, he highlights seemingly unrelated allegations in his Complaint concerning the bankruptcy court's "equitable injunctive power under Section 105." *Id.* at 5. He also points to stray and conclusory assertions that he made in his hearing before the bankruptcy court. *See id.* at 4-5. Such undeveloped assertions are insufficient to preserve the unpled standing argument Marable attempts to raise in this appeal. The Court, therefore, is under no obligation to consider these assertions in affirming the bankruptcy court's rulings.

Second, even if Marable did not waive his standing assertions, the Court would reach the same conclusions as it did before regarding the bankruptcy court's dismissal of Marable's claims. The

---

[22] The other—that Pack Lewisville used its "political clout" with the police to collect from Marable, Appellant Br. 8—is an insignificant extension of the allegations that the Court already rejected as insufficient to confer standing or jurisdiction over Marable's claims.

bankruptcy court arguably addressed the point Marable is now trying to make in the hearing in which Marable's claims were dismissed. Specifically, Marable argued at the hearing that as "an owner" of the Debtor, he had "an equitable interest to uphold the rights of the estate," to which the bankruptcy court responded, "but you're not upholding the rights of the estate, you're upholding your personal rights." R. 200-01. Likewise, Marable later asserted that he has "a right to bring standing . . . as the owner of a corporation, to protect the assets of the company," prompting the bankruptcy court to retort "but what assets are you trying to protect now?" *Id.* at 201. And at this point, Marable revealed the deficiency in his position—that his claims are merely an attempt to validate his contention that he should not have "to pay [Pack Lewisville] *personally*" and that he is "not *individually* liable" for the debt underlying his criminal theft of service charges. *Id.* at 201-02 (emphasis added). As the bankruptcy court aptly concluded, however, these assertions are "for some other court to decide." *Id.* at 202. In short, Marable cannot use his authority as the Debtor's principal as a sort of back door entry into bankruptcy court to resolve his own personal disputes. Therefore, the Court reaffirms it above conclusions that the bankruptcy court properly dismissed Marable's claims.

 E. *The Amended Complaint*

 The last issue raised in this appeal is whether the bankruptcy court "abused its discretion in dismissing all claims asserted in [Marable's] amended complaint." Appellant's Br. 4. Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, the bankruptcy court dismissed Marable's Amended Complaint because it was filed "the day of the hearing on the Motion [to Dismiss], and without leave of court or the consent of Defendants, in violation of Federal Rule of Procedure 15." R. at 3 (Or. Dismissing Adversary Case at 2 n.1). Outside of his statement of issues

section, Marable's brief never addresses this decision by the bankruptcy court to dismiss his Amended Complaint. Nor can the Court find any error in the bankruptcy court's dismissal based on Marable's failure to comply with Rule 15(a)(2). Even if the bankruptcy court should have construed Marable's Amended Complaint as a motion for leave, "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile."[23] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). And here, Marable's Amended Complaint offers nothing of significance that the Court did not already reject in finding dismissal warranted for his Complaint. Therefore, the bankruptcy court acted within its discretion in denying Marable leave to file his futile Amended Complaint.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's decision to dismiss the adversary proceedings brought by the Appellant, John Marable, against the Appellee, Sam Packs Ford Country of Lewisville, Ltd. Accordingly, this appeal is hereby **DISMISSED**.[24]

**SO ORDERED.**
**Dated: March 31, 2015.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[23] Even though the bankruptcy court did not offer this as an explanation for denying leave, the Fifth Circuit has indicated that "when the justification for the denial [of leave to amend] is readily apparent, a failure to explain is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Marcucci Sports*, 751 F.3d at 378.

[24] As such, the Court **FINDS MOOT** the Motion to Dismiss filed by Sam Packs Ford Country of Lewisville (doc. 3).